## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22CV257

**DR. STEFANIA RÖMISCH**
**DR. STEVEN R. JEFFERTS,**

**Plaintiffs,**
**v.**

**UNITED STATES DEPARTMENT**
**OF COMMERCE, GINA RAIMONDO,**
**SECRETARY, IN HER OFFICIAL CAPACITY**

**Defendant.**

---

### VERIFIED COMPLAINT AND JURY DEMAND

---

### I.    PRELIMINARY STATEMENT:

1.    This is an action for an award of damages, equitable recovery, attorneys' fees and other relief on behalf of Plaintiffs, Dr. Stefania Römisch and Dr. Steven R. Jefferts, former long-term employees of Defendant, United States Department of Commerce (National Institute of Standards and Technology) ("Defendant"), who were harmed by the Defendant's discriminatory employment practices and retaliatory acts against them, culminating in their constructive discharges.

2.    This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et. seq., as amended by the Civil Rights Act of 1991, at 42 U.S.C. §198l(a) ("Title VII").

### II.    JURISDICTION AND VENUE:

6

3.      This Court has original subject matter jurisdiction over Title VII claims pursuant to 28 U.S.C. § 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3), because they arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e-5(f)(3), because Defendant the Department of Commerce, National Institute of Standards and Technology maintains offices in this district, conducts business in this district, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, the alleged unlawful employment practices were committed here, and employment records relevant to those practices are maintained and administered here.

5.      Plaintiffs have exhausted their administrative remedies and complied with all statutory prerequisites to their Title VII claims. Plaintiff Römisch filed charges of gender discrimination and retaliation and Plaintiff Jefferts filed charges of retaliation, hostile work environment, and constructive discharge with the Equal Employment Opportunity Commission ("EEOC") on September 17, 2019 and October 21, 2019, respectively. Jefferts's complaint was referred to the Merit Systems Protection Board on August 26, 2021 as a mixed case, and the board issued its decision on November 30, 2021, with the decision becoming final on December 30, 2021.  Römisch received a decision from the EEOC on January 5, 2022, granting summary judgment and dismissal and a final order from the Agency on January 6, 2022.  This complaint is made within thirty days after the MSPB decision became final, 5 U.S.C. § 7703(b)(2) and within ninety days after receipt of the agency's final order, 29 C.F.R. § 1614.408(a).

7

### III.    PARTIES:

6.    Plaintiff, Dr. Stefania Römisch, is a female Ph.D scientist and was, at all times relevant, employed by the Department of Commerce, National Institute of Standards and Technology in Boulder, Colorado, and citizen of the State of Colorado, county of Boulder.

7.    Plaintiff, Dr. Steven R. Jefferts, is a male Ph.D. physicist, and the spouse of Plaintiff Römisch and was, at all times relevant, employed by the Department of Commerce, National Institute of Standards and Technology in Boulder, Colorado, and citizen of the State of Colorado, county of Boulder.

8.    Defendant, the United States Department of Commerce, is a federal agency which encompasses the National Institute of Standards and Technology, 1401 Constitution Ave NW Washington, DC 20230, and 325 Broadway Boulder, CO 80305, respectively. At all times relevant hereto, the Defendant acted through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of the Defendant.

9.    At all times material hereto, the Defendant is and has been a "person" and "employer" as defined under Title VII and is accordingly subject to the provisions of the act.

### IV.    FACTUAL ALLEGATIONS

10.    From mid-2009 until November 22, 2019, Dr. Römisch was a Ph.D. physicist employed by the Defendant, and a group leader of the atomic standards group, time and frequency division, National Institute of Standards and Technology (NIST).

11.    Dr. Jefferts was a Ph.D. physicist, also employed by NIST, as a group leader responsible for the United States primary frequency standard, NIST F-1 (atomic clock), where he had

been employed for twenty-eight years until October 31, 2019.

12.    In July, 2019, Dr. Elizabeth Donley, the recently-appointed Chief of the Time and Frequency Division, requested a meeting with Dr. Römisch to discuss her group's performance and the threatened resignation of an insubordinate male employee.

13.    At the meeting on July 30, 2019, Dr. Donley accused Dr. Römisch of toxic management and failing to meet her 2019 performance plan, and when Dr. Römisch explained that the failure to meet certain benchmarks, which were not included in her performance plan, was largely the result of insubordination by a male employee for whom Dr. Römisch was a supervisor, and the abject failure of the Defendant's management to address her multiple, ongoing, and well-known complaints of gender discrimination, hostility, and insubordination, which were first made in 2013 and included a report to Donley the month before.

14.    Dr. Donley responded that she had never witnessed gender discrimination in the division, despite having made her own complaints of gender discrimination and sexual harassment in the past, but did not know that Dr. Römisch was aware of, termed Dr. Römisch's claims, "frivolous", and refused her request for a management intervention similar to what had been provided to Römisch's male colleague.

15.    When Dr. Donley refused to address the gender discrimination and insubordination raised by Dr. Römisch, Dr. Römisch left the meeting and, deeply distressed, went home on medical leave.

16.    Dr. Donley immediately reported to her supervisors that the meeting had occurred, and did not report that Dr. Römisch had raised the discrimination issues, but the next day, provided Dr. Römisch with the necessary information to file a complaint with the EEOC.

17.    Dr. Jefferts, aware of Dr. Römisch's extreme distress after the meeting, informed his timekeeper that he was taking medical leave, as well, so that he could provide some support to his spouse, and remained out on medical leave on July 31 and August 1, 2019, until he believed it was

reasonable to leave Dr. Römisch alone at home.

18.    On August 1, 2019, Donley removed Römisch as the group leader of the atomic standards group, and replaced her with an unqualified man who had no scientific expertise, and no management experience, and who had previously stated that the work she was tasked with was "beyond the reach of my abilities".

19.    Dr. Römisch was the only female group leader in the time and frequency division in 2019, the only female group leader within decades, and the only group leader removed from a group leader position in more than thirty years prior.

20.    Prior to demoting Dr. Römisch, neither Dr. Donley nor any member of NIST management had ever raised performance or management issues with her, or suggested that Dr. Römisch was not performing adequately in any area.

21.    On August 5, 2019, Donley falsely accused Jefferts of being absent from work on August 2, 2019, having made no attempt to ascertain whether this was in fact true, which would have required no more than an email, phone call, or inquiry of Jefferts's coworkers to establish that Jefferts was at work for significantly more than eight  hours on August 2, 2019.

22.    On August 6, 2019, Donley, having made no apology for the false accusation regarding Jefferts's attendance at work on August 2, 2019, ordered Jefferts, the recipient of multiple prestigious scientific awards, both nationally and internationally, and the holder of an exceptional reputation in the international scientific community, to report his arrival and departureto and from NIST each day.

23.    Donley falsely alleged that she required Jefferts to report his arrival and departure to and from NIST each day because of what she claimed was "the spottiness of his leave reporting" and the fact that "he was not getting his work done".

24.    Donley had never, at any time prior to August 5, 2019, raised with Jefferts any concerns regarding his reporting of annual or medical leave, his performance at work, or any deficiency in that performance, nor had any supervisor, at any time during his twenty-eight-year tenure, and a

requirement to report in and out of NIST had never, in the previous twenty-eight years been imposed on a level V physicist in the Time and Frequency Division at NIST.

25.    The Agency and its agent, Donley, were, at all times in 2019, aware that employees Jefferts and Römisch were married to each other, and that Jefferts's absence on medical leave from July 30, 2019 through August 1, 2019, was due to his attempt to provide support for Römisch.

26.    After Jefferts filed a complaint regarding Donley's imposition of the daily reporting requirement, Donley removed it, but threatened to reimpose the reporting requirement at the time she lifted it, threatening Jefferts with ongoing retaliation if he displeased her.

27.    In September, 2019, Donley demanded Jefferts falsely attest to a meeting (a beginning of year performance plan review) which never been held, sign a formal attestation that it had occurred, and falsely backdate that attestation by nearly a year.

28.    When Jefferts refused, on September 12, 2019, Donley threw the performance plan at Jefferts and stated, "you can sign this or not, I don't give a shit", and when he again refused, began seizing significant portions of Jefferts's office and laboratory resources, displacing a highly-respected emeritus scientist who officed in Jefferts's space.

29.    When Jefferts objected to the second round of confiscations, because they threatened his ability to perform his job function and duties, he was subjected to an extraordinarily abusive tirade from Donley, which he related to several colleagues at the time, advising them that he was dumbfounded at the treatment by Donley.

30.    Donley then demoted Jefferts by several levels within the Time and Frequency Division organizational chart, removing him from the position as group leader of the Primary Frequency Standards Group and requiring him to report to an unqualified subordinate two organizational levels down from his previous position.

31.    During the period from July 30 to mid-September 22, 2019, Dr. Römisch worked largely remotely, which was permitted under her employment agreement, and was present at NIST

11

two or three days a week; after mid-September, she worked at the NIST facility on a daily basis.

32.    In September, 2019, Donley completed a year-end performance evaluation for Römisch in which Römisch received by far the poorest evaluation of her ten-year tenure at NIST.

33.    From August 1 through November 22, 2019, Donley repeatedly and purposefully excluded Römisch from communications essential to Römisch's performance of her job duties and to her professional development and reputation.

34.    Donley's unrelenting retaliation against both Römisch and Jefferts finally resulted in Römisch's and Jefferts's involuntary resignations effective November 22, and November 8, 2019, respectively, at which time Jefferts informed Donley's supervisors of the reason for his resignation.

35.    After being notified of Jefferts's claims of continuing and ongoing retaliation by Donley, the Agency supervisors, made no attempt to investigate his claims or Donley's conduct.

## V.    <u>STATEMENT OF CLAIMS:</u>

## <u>COUNT I</u>

### Title VII - Gender Discrimination, Hostile Work Environment)
### Plaintiff Römisch v. Defendant

36.    Plaintiff Römisch incorporates by reference paragraphs 1 through 35 as though fully set forth at length herein.

37.    The Defendant subjected Plaintiff Römisch to a hostile working environment and sex discrimination based on her gender, as detailed above.

38.    The hostile work environment was severe and pervasive, based on the nature of the harassment, and Defendant's blatant denial of its existence and refusal to investigate.

39.    Plaintiff Römisch considered the aforementioned conduct to be discriminatory, and reported said discriminatory conduct, both verbally and in writing, to numerous management

12

level employees of Defendant, including three Time and Frequency Division Chiefs, from 2013 through 2019.

40.    Accordingly, Defendant was fully aware of the hostile work environment, but despite Plaintiff Römisch's numerous complaints of discrimination, Defendant refused to conduct an investigation or otherwise cause the discriminatory conduct to cease.

41.    Rather than cause the discriminatory conduct to cease, Defendant harassed, demoted, excluded, and constructively terminated Plaintiff Römisch's employment, on wholly-pretextual grounds, and her employment was actually terminated because of her gender and determination to address the gender discrimination and gender-based mistreatment.

42.    Accordingly, Defendant's discriminatory acts have deprived Plaintiff Römisch of equal employment opportunities because of her sex in violation of Title VII.

43.    As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Römisch sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, loss of future earning power, back pay, and front pay and interest due thereon.

44.    As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Römisch suffered severe emotional distress, embarrassment, humiliation, loss of self- esteem, and reputational damage.

### COUNT II

**Title VII - Retaliation**
**Plaintiffs Römisch and Jefferts v. Defendant**

45.    Plaintiffs incorporate by reference paragraphs 1 through 35 as though fully set forth at length herein.

46.    The actions of Defendant, through its agents, servants, and employees, in

13

subjecting Plaintiffs to retaliation for opposing unlawful discrimination in the workplace, constituted a violation of Title VII, Section 704(a), 42 U.S.C. § 200e-3(a).

47.    Defendant created a workplace environment which was unlawfully hostile, did so deliberately and knowingly, and constructively terminated Plaintiffs' employment in retaliation for opposing and registering complaints of discrimination in the workplace and participating in EEOC proceedings.

48.    The Defendant engaged in the unlawful employment practice of retaliation with malice or reckless indifference to the Plaintiffs' federally-protected rights, and thereby deprived them of equal employment opportunities.

49.    As a direct result of the aforesaid unlawful retaliatory practices engaged in by the Defendant in violation of Title VII, Plaintiffs sustained permanent and irreparable harm, resulting in the loss of their employment, which caused them to sustain a loss of earnings, costs of relocation, the value of certain benefits, including retirement benefits, loss of future earning power, back pay, and front pay, and interest due thereon, and grave reputational damage.

50.    As a further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiffs suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## VI.    PRAYER FOR RELIEF

51.    Plaintiffs incorporate by reference paragraphs 1 through 50 of their Complaint as though fully set forth at length herein.

**WHEREFORE,** Plaintiffs Römisch and Jefferts request that this Court enter judgment in their favor and against the Defendant, and further enter:

a.    An award of compensatory damages against the Defendant in an amount to be determined by the factfinder for past and future pecuniary damages, pain, suffering, mental anguish, loss of enjoyment, and reputational damage;

14

b.      Back pay and front pay as provided by law, together with statutory pre-judgment and post-judgment interest;

c.      An award of attorneys' fees, pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

d.      All such other and further relief the Court may deem just and proper.

## VII.    JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

DATED this 28th day of January, 2022

/s/ Ingrid J. DeFranco

Ingrid J. DeFranco
LAW OFFICE OF INGRID J. DEFRANCO
P.O. Box 128 Brighton, CO 80601-0128
303-443-1749; fax 303-558-4294
Ingrid.defranco@gmail.com
Colorado Registration No. 31206
*Attorney for Plaintiffs*

15

## VERIFICATION

I hereby verify that the statements contained in this **Complaint** are true and correct

to the best of my knowledge, information and belief. I understand that any statements

herein are made subject to the penalties of perjury of the laws of the United States of

America.


Executed on January _27_, 2022


/s/ _____

Stefania Römisch



Executed on January _26_, 2022


/s/ _____

Steven R. Jefferts