IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00257-DDD-NRN

STEFANIA ROMISCH,
STEVEN R. JEFFERTS,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF COMMERCE, GINA RAIMONDO, SECRETARY, IN HER OFFICIAL CAPACITY,

    Defendant.

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT, IN PART

Defendant Raimondo moves to dismiss Plaintiff Romisch's hostile work environment Claim ("Count I"), from the Amended Complaint, ECF No. 18 at ¶¶ 61-79, under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Count I should be dismissed because Romisch fails to provide nonconclusory allegations plausibly showing that her supervisors subjected her to severe or pervasive harassment, or that her supervisors' alleged conduct was motivated by discriminatory animus.[1]

### BACKGROUND

Count 1 is asserted by Plaintiff Stefania Romisch, a physicist formerly employed by the Department of Commerce, National Institute of Standards and Technology ("NIST") in Boulder, Colorado. *See* ECF No. 18 ¶¶ 6-7. Romisch's allegations fall into two categories.

---

[1] Counsel for Defendant conferred with counsel for Plaintiffs regarding the relief requested in this motion. Plaintiffs oppose the requested relief. *See* DDD Civ. P.S. III(D)(1).

As an initial matter, Romisch makes vague allegations about a few conversations and meetings that occurred with a few male colleagues at unspecified times over a six-year span, between 2013 to 2019. *See id.* ¶¶ 12-15, 17, 19, & 25. As for specifics, she alleges that she was "verbally abused" by three male colleagues during two meetings, but does not specify what year each meeting took place during this period. *See* ECF No. 18 ¶¶ 13-14 & 25. Romisch further alleges that three male supervisors were "aware" of the alleged verbal abuse but did not take affirmative steps to address it. *See id.* ¶¶ 15-17.

Next, Romisch makes various complaints about her female supervisor, Elizabeth Donley, who was appointed in 2018. Romisch's complaints about Donley fall into three groups.

*First*, Romisch alleges that two male colleagues complained to Donley that Romisch was a "terrible manager and that neither man could or would work with her." *Id.* ¶¶ 16, 20. Romisch alleges that these complaints about Romisch were made because her subordinate employee, Bijou Patla, "deeply resented being accountable to a female supervisor," and thus "began actively plotting with a male colleague, Dr. Neil Ashby, to engineer Dr. Romisch's ouster." *Id.* ¶¶ 18-19. Romisch does not allege any facts to support her statement that her subordinate harbored such gender resentment or engaged in "plotting" based on gender resentment. In fact, Romisch alleges Ashby had come to her *defense* following one of the meetings she complains about occurring sometime between 2013 and 2019. *See* ECF No. 18 ¶ 13. Nor does Romisch allege facts showing that Donley knew about the alleged plotting.

*Second*, Romisch alleges that during a July 30, 2019, meeting, Donley criticized her. She alleges that Donley (1) expressed concern that Romisch had engaged in "toxic management," (2) advised Romisch that she had failed to meet benchmarks in her 2019 performance plan,

(3) expressed that she had not witnessed gender discrimination in Romisch's division, and (4) declined Plaintiff's request for "management intervention," *id.* ¶¶ 16, 25, 27.

*Third*, Romisch alleges that following this meeting, Donley supervised her harshly. Romisch alleges that Donley (1) removed Romisch as group leader of the atomic standards group and replaced her with an "unqualified man," *id.* ¶ 34; (2) altered her performance plan to include more tasks than Romisch could accomplish, *id.* ¶ 38; (3) excluded Romisch from some communications relevant to her assigned tasks, *id.* ¶ 40; and (4) gave Romisch the "poorest evaluation" of her ten-year tenure at NIST, *id.* ¶ 57. Romisch contends that her second-level supervisor (Williams) "ratified and praised" Donley's decision to demote her. *Id.* ¶ 37.

In Count 1, Romisch contends that these allegations show that her supervisors—"Williams and Donley, representing the Defendant Department," *id.* ¶ 66—subjected her to a discriminatory hostile work environment based on her gender. *See id.* ¶¶ 61-69.

## ARGUMENT

Romisch fails to state a viable hostile work environment claim. First, many of her allegations are not allegations of fact, but are conclusory and thus not entitled to the presumption of truth. Second, accepting Romisch's non-conclusory allegations as true, Romisch's allegations fall short of establishing the type of "severe" or "pervasive" harassment necessary to state a hostile-work-environment claim. Finally, Romisch fails to set forth facts plausibly showing a nexus between her supervisors' alleged conduct and discriminatory animus based on gender.

**I.     To apply Rule 12(b)(6) in an employment discrimination case, a court must identify the non-conclusory facts, then consider what facts the plaintiff would know.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

3

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To engage in this inquiry, the Court must first determine which allegations are conclusory. *Id.* "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). The Court must consider only the non-conclusory facts to determine whether the complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

Identifying the non-conclusory facts is essential in employment cases, where "there are certain details [plaintiffs] should know and could properly plead to satisfy the plausibility requirement." *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012). For example, plaintiffs in such cases "should know details about how [defendants] treated them compared to other … employees," and should know why—specifically—they believe that a defendant's actions were "connected with *discriminatory* animus." *See id.* (emphasis added).

## II.     Romisch fails to state a claim for hostile-work-environment discrimination.

To state a claim for a discriminatory hostile work environment, Romisch must allege nonconclusory facts establishing two elements of a hostile work environment claim: (1) severity—the discriminatory conduct was "sufficiently severe or pervasive such that it altered the terms or conditions of [her] employment and created an abusive working environment," and (2) animus—i.e., she was discriminated against *because of* a protected ground. *Morris v. City of Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012); *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 520 (10th Cir. 2017) ("To state a hostile work environment claim …, a plaintiff must, among other things, plead facts sufficient to show that the work environment 'is permeated with *discriminatory* intimidation, ridicule, and insult that is sufficiently severe or pervasive to

4

alter the conditions of the victim's employment and create an abusive working environment.'") (emphasis added) (examining Title VII claim under Rule 12(b)(6)). Romisch cannot establish either element.

      **A.**    **Element that should be alleged but is not: Romisch fails to support her claims with nonconclusory allegations.**

The Tenth Circuit has explained that allegations are conclusory when they either "state[] an inference without stating underlying facts" or are "devoid of any factual enhancement." *Brooks*, 985 F.3d at 1281. Under that standard, many of Romisch's allegations are conclusory.

First, Romisch alleges that three colleagues "verbally abused" her but provides no detail as to what, specifically, her colleagues said, or why those statements were abusive. *See* ECF No. 18 ¶¶ 13-15. Courts have found such allegations conclusory. *See Folsom v. Knutson*, 702 F. App'x 781, 782 (10th Cir. 2017) (characterizing claim that defendant "verbally abused" plaintiff as conclusory); *Brown v. MDOC*, 215 F.3d 1325 (6th Cir. 2000) (same).

Next, Romisch alleges that her second-level supervisor (Williams) was "repeatedly made aware of abusive conduct toward" her—but again she alleges no facts plausibly *showing* such awareness. *See* ECF No. 18 ¶ 17. Romisch does not allege that she ever spoke to Williams directly or complained about the alleged abusive conduct to Williams, specifically. Nor does she provide detail regarding when or how Williams became "aware" of the alleged abuse—which could have occurred anywhere from 2013 to 2019. *See generally id.* & *id.* ¶ 25.

Likewise, Romisch alleges the conclusion that her subordinate (Patla) "deeply resented being accountable to a female supervisor," but provides no *facts* to support this conclusion. *See id.* ¶ 19. She alleges no facts indicating that his refusal to work with Romisch—taken as true—was due to his "resentment" of "being accountable to a female supervisor" and not some other

basis. *See generally id.*

Romsich next alleges that Donley "refused her request for a management intervention similar to what had been provided to Romisch's male colleague." *Id.* ¶ 27; *see also id.* ¶ 28 (alleging that a management consultant "had been successfully brought in for a male group leader"). But again, her term "similar" is conclusory. "A plaintiff's assertion that she is 'similarly situated' to other employees is 'just a legal conclusion—and a legal conclusion is never enough.'" *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019) (quoting *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014)). "Generally, to be similarly situated, employees must deal with the same supervisor, … because [d]ifferent supervisors will inevitably react differently" to employee misconduct." *Luke v. Hosp. Shared Servs., Inc.*, 513 F. App'x 763, 765-66 (10th Cir. 2013) (cleaned up). Here, Romisch provides no facts showing that her "male colleague" was "similar" to her or that their circumstances were comparable, or that she and her male colleague made this request to the same supervisor.

Romisch also makes the conclusory allegation that her second-level supervisor (Williams) "ratified" and "praised" Donley's responses to Romisch's complaints. *See* ECF No. 18 ¶¶ 32, 37. Romisch offers no explanation regarding how Williams "ratified" or "praised" Donley—she offers only the unsupported conclusion that he did so. Again, "there are certain details [plaintiffs] should know and could properly plead to satisfy the plausibility requirement." *Khalik*, 671 F.3d at 1194. If Romisch is alleging that Williams "ratified" or "praised" specific actions, she should be able to provide facts showing why she believes this to be the case.

Romisch next sweepingly alleges, without any factual enhancement, that Donley began to exclude her from "interactions with the relevant international scientific communities and

6

encouraged or knowingly permitted Romisch's male colleagues to do the same." ECF No. 18 ¶ 43. Again, she does not allege facts supporting these broad conclusions. *See generally id.*

Finally, the section entitled "Count I" is composed entirely of conclusory allegations. *See* ECF No. 18 ¶¶ 61-69. These allegations do not add any non-conclusory factual content.

The Court must ignore all these conclusory allegations, which either state inferences or are devoid of factual enhancement (or both), in its analysis.

**B.    Element that should be alleged but is not: The alleged harassment was so severe or pervasive that it altered a term, condition, or privilege of Romisch's employment.**

To state a hostile-work-environment claim, Romisch must set forth nonconclusory facts plausibly showing that the discriminatory harassment was "sufficiently severe or pervasive to alter the conditions" of employment. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015); *Brown*, 708 F. App'x at 520. Romisch must also "allege facts showing that the work environment '[wa]s both subjectively *and* objectively hostile or abusive.'" *Brown*, 708 F. App'x at 520 (emphasis added). Courts consider "the totality of the circumstances … , including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Brown*, 708 F. App'x at 521 (quoting *Harris*, 510 U.S. at 23).

"The Supreme Court has 'made it clear that conduct must be *extreme* to amount to a change in the terms and conditions of employment,' and that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 522 (emphasis added). "Isolated incidents," such as those alleged here, "are sufficient to support a hostile work environment claim *only* when they are 'threatening and

7

severe' or 'especially egregious or extreme.'" *Brown*, 708 F. App'x at 522 (10th Cir. 2017) (quoting *Morris*, 666 F.3d at 666-67) (emphasis added). "Most incidents found to meet this standard involve some kind of physical assault." *Brown*, 708 F. App'x at 522.

Romisch's allegations do not meet these standards. "Courts presented with allegations that fail to demonstrate sufficient severity or pervasiveness regularly dismiss hostile work environment claims, even at the pleading stage." *Harrison v. State Univ. of New York Downstate Med. Ctr.*, 2018 WL 4055278, at *12 (E.D.N.Y. July 6, 2018), *report and recommendation adopted*, 2018 WL 4054868 (E.D.N.Y. Aug. 24, 2018) (collecting cases).

First, regarding the "verbal abuse" she allegedly experienced from three coworkers (a conclusory allegation), Romisch provides no information about when this alleged abuse occurred, what was said, what her supervisors knew about it, or any other facts suggesting that the alleged abuse was pervasive or extreme. *See generally* ECF No. 18. "Unpleasant or negative interactions with a co-worker are "ordinary tribulations" that are inherent when a large number of different personalities interact in an employment context." *Falk v. City of Glendale*, No. 12-cv-00925-JLK, 2012 WL 2390556, at *4 (D. Colo. June 25, 2012) (plaintiff failed to state a hostile work environment claim where she encountered hostility from coworkers while being a nursing mother, including having a supervisor make a "moo" noise at her and refusing to permit her to take a break after the plaintiff had "expressed milk on herself").

Second, regarding Patla and Ashby's alleged "plot" to engineer Romisch's ouster, Romisch fails to provide nonconclusory allegations plausibly showing that any such "plot" constituted severe or pervasive harassment or was even known to Donley. Romisch offers nothing about the alleged plot beyond alleging that these individuals complained to Donley that

8

she was a "terrible manager." ECF No. 18 ¶ 19. Negative statements about a supervisor do not show severe or pervasive harassment. *See, e.g. Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015) (negative statements about employee to another supervisor did not establish a hostile work environment); *Wadhwa v. Sec'y, Dep't of Veterans Affairs*, 505 Fed. App'x 209, 213 (3d Cir. 2012) (complaint made by nurse about performance of federal employee was not pervasive behavior sufficient to sustain hostile work environment claim).

Third, regarding Romisch's meeting with Donley on July 30, 2019, Romisch again offers no facts showing that this single meeting constituted severe or pervasive harassment. *See generally* ECF No. 18. Romisch acknowledges that the subject of the meeting was her work performance. She does not allege that Donley acted in a manner that was extreme or abusive, or that there was any physical contact between the two. *See Brown*, 708 F. App'x at 522 ("Most incidents found to meet this standard involve some kind of physical assault.").

Finally, Romisch's complaints about Donley's post-meeting supervision (that Donley excluded her from certain communications, gave her too much work, demoted her from her position as group leader, and issued a poor performance review, and that Williams "ratified" and "praised" these actions) do not rise to the level of extreme or pervasive harassment. The incidents may have been stressful, but "[n]ormal job stress does not constitute a hostile or abusive work environment." *Trujillo v. Univ. of Colorado Health Scis. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) (plaintiff's allegations showed "little more than a collection of unrelated incidents where Plaintiff and [her supervisor] were at odds"); s*ee also Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (two racially insensitive comments fell "far short of the 'steady barrage' required for a hostile environment claim").

As the Tenth Circuit has explained, the types of allegations that Plaintiff makes here—that she "received no relief when [s]he asked for help, and that [s]he experienced mistreatment by and disciplinary action from h[er] supervisors"—may show that Plaintiff "faced adversity in the workplace," but do not show that "these circumstances created an atmosphere sufficiently severe to qualify as being permeated with discriminatory intimidation, ridicule, and insult." *Williams*, 849 F.3d at 897; *see also Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257 (10th Cir. 1998) (four acts of unwanted physical contact regarding one female employee, as well as four gender-based comments regarding another female employee, were insufficient to show a hostile work environment); *Fleming v. MaxMara USA*, Inc., 371 F. App'x 115, 119 (2d Cir. 2010) (no hostile work environment existed even though "defendants wrongly excluded [plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *ElHelbawy v. Pritzker*, 2015 WL 5535246, at *6 (D. Colo. Sept. 21, 2015) (plaintiff failed to state a hostile work environment claim where she alleged that her supervisor searched her belongings, stalked her outside the workplace, violated her privacy, and collected various pictures of her), *aff'd*, 663 F. App'x 658 (10th Cir. 2016).

    **C.**    **Element that must be alleged but is not: Romisch was discriminated against based on a protected ground.**

Even if Romisch could show that she was subjected to a hostile work environment (which she cannot), she still has not established that the alleged hostility was "based on" discriminatory animus. Romisch must plead facts showing that her work environment was permeated with "discriminatory" intimidation, ridicule, and insult. *Brown*, 708 F. App'x at 520. The alleged harassment must be discriminatory; "[g]eneral harassment alone is not actionable." *Williams v.*

*FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017). Romisch cannot meet this burden.

First, only one of Romisch's allegations regarding her supervisors' conduct (that Dr. Donley replaced Romisch as group leader with an "unqualified man," ECF No. 18 ¶ 34), has any apparent link to Plaintiff's gender.[2] But Plaintiff does not provide facts plausibly showing that this replacement was *because of* discrimination—particularly given the context in which this replacement took place. Plaintiff admits that she was replaced as group leader two days after her supervisor raised questions about her performance. *See id.* ¶ 34. Plaintiff admits that she failed to meet certain benchmarks. *See id.* ¶ 25. Plaintiff also admits that, in response to her supervisor's feedback, Plaintiff declined to take responsibility for her deficiencies and instead blamed a subordinate employee for her failure to meet those benchmarks. *See id.* ¶25. Plaintiff does not allege that she made any effort to understand Donley's concerns or work constructively to address those concerns. Donley's decision to remove Plaintiff as group leader is thus entirely consistent with the actions of a supervisor who has lost faith in an employee's ability to lead.

In other words, Plaintiff's allegations about how Donley supervised her are consistent with both unlawful *and* lawful conduct. *See Iqbal*, 556 U.S. at 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (citation omitted)); *Gowadia v. Stearns*, 596 F. App'x. 667, 671-72 (10th Cir. 2014) (affirming dismissal of claim where the allegations were equally consistent with lawful conduct as with unlawful).

---

[2] Romisch also alleges that Williams "ratified and praised" Donley's actions because they solved the "'problem' of Romisch's gender which did not require him to address the discrimination or act against the three men who had engineered" Romisch's performance problems. ECF No. 18 ¶ 37. But this allegation is conclusory. Moreover, Romisch provides no facts plausibly showing that Williams' "ratification" of Donley's choices had anything to do with Romisch's gender. *See generally* ECF No. 18.

11

Beyond this single incident, Romisch makes no other allegations linking the alleged harassment to her gender. She does not allege that Donely (a woman herself) subjected other women to harassment. Nor does she allege that Donley treated similarly situated male employees more favorably. To the contrary, Plaintiffs allege that Donley subjected Plaintiff's husband, Dr. Jefferts—a male—to the same negative treatment that Romisch claims she experienced. *See* ECF No. 18 ¶¶ 46-55, 59. Plaintiff thus has not plausibly shown that the alleged "harassment" she experienced was "because of" her gender. *See, e.g.*, *Hall v. Oklahoma Dep't of Hum. Servs.*, 2016 WL 4133550, at *3 (N.D. Okla. Aug. 3, 2016) (finding no allegations showing "gender motivated" conduct where "plaintiff's complaints allege … that plaintiff's co-worker had difficult relationships with numerous employees, both male and female[.]").

## CONCLUSION

Because Count I fails to set forth non-conclusory facts sufficient to meet the high standards to state a hostile work environment claim, the Court should dismiss it.

Dated May 31, 2022.

Respectfully submitted,

COLE FINEGAN
United States Attorney

*s/ Lauren Dickey*
Lauren Dickey
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Ste. 1600
Denver, CO 80202
Tel. (303) 454-0188
Fax (303) 454-0411
Lauren.Dickey2@usdoj.gov

Certification pursuant to DDD Civ. P.S. III(A)(4):  I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF, which will send notification of such filing to the following email address(es):

Ingrid.DeFranco@gmail.com

<u>s/ Lauren Dickey</u>
Lauren Dickey
Assistant United States Attorney
United States Attorney's Office
