IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-0257-WJM-NRN

STEVEN R. JEFFERTS,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF COMMERCE,
HOWARD W. LUTNICK, SECRETARY, in his official capacity,

    Defendant.

## ORDER ON MOTIONS *IN LIMINE*

Before the Court is Plaintiff Steven R. Jefferts's Motion *in Limine* to Restrict the Scope of Evidence Related to Dr. Stefania Römisch (ECF No. 74) ("Plaintiff's Motion") and, in his official capacity as Secretary of the United States Department of Commerce, Defendant Howard R. Lutnick's ("Commerce") Motion *in Limine* to Exclude Testimony or Other Evidence as to Any Purported Acts of Retaliation That Have Not Been Disclosed (ECF No. 75) ("Defendant's Motion"). Both Motions are ripe for review. (*See* ECF Nos. 80, 86.)

The Court presumes the parties' familiarity with the facts of the case and United States District Judge Daniel D. Domenico's prior Orders. (*E.g.,* ECF No. 49.) For the reasons set forth below, Plaintiff's Motion is granted in part and denied in part and Defendant's Motion is denied.

### I. APPLICABLE LAW

Motions *in limine* enable the Court "to rule in advance of trial on the relevance of

certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Michael v. Rocky Mountain Festivals, Inc.*, 2019 WL 10011881, at *1 (D. Colo. July 19, 2019) (citation omitted); *Ward v. Nat'l Credit Sys., Inc.*, 2024 WL 2846609, at *3 (D. Colo. June 5, 2024) ("Pretrial rulings issued in response to motions in limine can save time during trial as well as cost and effort for the Parties as they prepare their cases."). Pretrial rulings, however, "are often better left until trial when the Court can assess the question and evidence presented." *Colorado Montana Wyoming State Area Conf. of NAACP v. Smith*, 2024 WL 2939163, at *2 (D. Colo. June 11, 2024) (citing *Vanderheyden v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 4131439, at *2 (D. Colo. Sept. 12, 2022)).

Whether to admit or exclude evidence is a decision that "lies within the sound discretion of the trial court." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994). The moving party has the burden of establishing that the "evidence is inadmissible on any relevant ground." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (citation omitted). Accordingly, the Court may deny a motion *in limine* if the movant fails to set out, with the necessary specificity, the evidence it wishes to be excluded. *Id.* Denial of a motion *in limine*, however, does not mean that the evidence will automatically be admitted at trial; rather, "the court may alter its limine ruling based on developments at trial or on its sound judicial discretion," upon a party's timely objection. *Id.* (quotation omitted).

Under Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid.

2

401.  Relevant evidence is generally admissible but may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

## II. PLAINTIFF'S MOTION

Plaintiff's Motion concerns the scope of admissible evidence regarding Römisch's "workplace history at [the National Institute of Standards and Technology ('NIST')]."  (ECF No. 74 at 2.)  The parties agree that "the fact of [Römisch's formal complaint to the EEO" must be admitted at trial.  (*Id.* at 3; *see also* ECF No. 86 at 8, 10.)  Beyond that fact, however, Jefferts opposes any effort by Commerce to introduce evidence of Römisch's

- "workplace interactions with colleagues and supervisees," including her "fraught interactions with male colleagues and supervisees";
- interactions with "management other than Dr. [Elizabeth] Donley," including her "complaints to management about workplace behavior of male colleagues" and "disagreements with management over its handling of her complaints";
- "specific and general job performance," including "inability to meet performance benchmarks due to obstruction by a male supervisee";
- "management style and efficacy"; and
- "technical capability."

(ECF No. 74 at 2–3*.*)  Jefferts argues that evidence on these topics is not relevant to his retaliation claim and likely to confuse the jury and waste time.  (*Id.*)

"Commerce agrees that evidence of Dr. Römisch's general reputation for treating her supervisees harshly, her overall performance as a worker, and the alleged facts

3

underlying her discrimination complaint are not relevant and should not be referenced at trial." (ECF No. 86 at 8.) Nevertheless, it argues that "[s]ome evidence about Dr. Römisch must be admitted because it provides necessary context about Dr. Donley's knowledge, state of mind, and decision-making relevant to Dr. Jefferts's retaliation claim." (*Id.*) This most significantly includes evidence of the July 30, 2019 meeting between Donley and Römisch. (*See id.*)[1] The Court agrees with Commerce that evidence related to this meeting is relevant and admissible.

The Court understands that the July 30, 2019 meeting directly precipitated Römisch's decision to file an EEO complaint, and Jefferts's act of supporting Römisch in preparing that complaint in the days and weeks that followed is in turn the "protected activity" forming the basis for his retaliation claim. (ECF No. 74 at 2; ECF No. 86 at 3–5.) Thus, while Römisch's claims are no longer at issue, the Court agrees with Commerce that "Dr. Donley's understanding of the situation, based on what happened in the lead-up to the meeting, at the meeting, and in her communications with Dr. Römisch and Dr. Jefferts in the days that followed" will be "essential to the jury's consideration of Dr. Jefferts's claim at trial"—and specifically whether Donley acted with retaliatory motive toward Jefferts. (*Id.*) *See, e.g., Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 444 (4th Cir. 1998) ("the perception of the decision maker . . . is relevant to

---

[1] Plaintiff's Motion does not specifically address the admissibility of evidence regarding the July 30, 2019 meeting, and it is somewhat unclear to the Court whether Jefferts takes issue with *all* evidence pertaining to that meeting where his Motion seeks to preclude evidence of Römisch's "interactions with management *other than Dr. Donley*." (ECF No. 74 at 2 (emphasis added).) Nevertheless, the Court understands the July 30, 2019 meeting was prompted by a disagreement between Römisch and a supervisee, Dr. Bijunath Patla, and Römisch's substantive work on a new time scale. (ECF No. 86 at 2.) The Court presumes Jefferts had these issues in mind in requesting to exclude all evidence regarding Römisch's "fraught interactions with colleagues and male supervisees" and "inability to meet performance benchmarks due to obstruction by a male supervisee." (ECF No. 74 at 2.)

4

the question of retaliation"), *overruled on other grounds by Nat'l R.R. Passenger Corp v. Morgan,* 563 U.S. 101, 105 (2002).

In this way, Commerce's proposed boundaries of admissible evidence concerning the July 30, 2019 meeting appear reasonable.  The Court will permit evidence regarding:

- "the importance of the time scale project Dr. Römisch had been leading and Dr. Donley's concerns about necessary work getting done";
- "Dr. Römisch's interaction with Dr. Patla in late July 2019 that led to him notifying Dr. Donley that he intended to quit"; and
- "what happened at the July 30, 2019 meeting and shortly thereafter."[2]

(ECF No. 86 at 10.)

On the other hand, the Court similarly sees little need to dredge up evidence regarding Römisch's overall reputation at NIST, any negative interactions she had with colleagues other than Donley and Patla and/or outside of the pertinent timeframe, and her job performance in any aspect that is not immediately relevant to Donley's reasons for facilitating the July 30, 2019 meeting.  Any such evidence will be precluded at trial.

Plaintiff's Motion is otherwise cast in such broad terms that the Court cannot make an informed ruling as to the admissibility of any other specific evidence about Römisch's employment history at NIST at this time.  To the extent Jefferts believes he has a good faith basis to do so, he may object to the introduction of a particular fact concerning Römisch as it arises at trial.

For the reasons set forth above, Plaintiff's Motion is granted in part and denied in

---

[2] The Court considers Donley's reaction to Römisch's absence from work in the hours and days immediately following the July 30, 2019 meeting to be within the scope of this admissible evidence.  (*See* ECF No. 86 at 9.)

5

part.

### III. DEFENDANT'S MOTION

Defendant's Motion concerns a scientific paper co-authored by NIST scientists and submitted to the Institute of Electrical and Electronics Engineers ("IIEE") International Frequency Control Symposium ("IFCS") in 2022, roughly three years after Jefferts's resignation from NIST in the fall of 2019.  (ECF No. 75 at 3.)  The IFCS publication includes a description of a cesium fountain clock that Jefferts's designed and/or built during his employment with NIST.  (ECF No. 80 at 1.)  According to Jefferts, all or a portion of that description is technically incorrect, prompting him to submit a formal ethics complaint to IIEE in April 2024.  (*Id.* at 1–2; ECF No. 75 at 3.)

Defendant's Motion is predicated on its belief that "Jefferts intends to assert at trial that Dr. Donley's failure to take action to retract the scientific publication constitutes an act of retaliation against him."  (ECF No. 75 at 4.)  Commerce argues that Jefferts should be precluded from relying on this evidence at trial because he did not disclose the publication as a retaliatory act during the discovery period.  (*Id.*)  However, Jefferts states in his response that he has no intention of introducing evidence of the publication as evidence of retaliation at trial.  (ECF No. 80 at 2.)  Rather, Jefferts contends that "Dr. Donley's failure to require the paper's authors to correct, or retract, it, is [*sic*] evidence of the hostility she had toward Dr. Jefferts and her consequent willingness to permit his professional reputation to be badly damaged."  (*Id.* at 3.)

The Court will hold Jefferts to his representation that he does not intend to rely on the IFCS publication as evidence of a retaliatory act at trial.  For that reason, it deems Commerce's late disclosure arguments moot.

The Court otherwise agrees that the IFCS publication is of marginal relevance to Jefferts's retaliation claim, particularly given its remoteness to the relevant events at issue. Nonetheless, the prejudice associated with its introduction at trial is likely also marginal. Accordingly, the Court will permit Jefferts to introduce evidence related to the IFCS publication, subject to Commerce renewing its Rule 403 objection if Jefferts uses an inordinate amount of trial time to do so.

For these reasons, Defendant's Motion is denied.

### IV. CONCLUSION

For the reasons more fully set forth above, the Court ORDERS as follows:

1. Plaintiff's Motion (ECF No. 74) is GRANTED IN PART and DENIED IN PART; and

2. Defendant's Motion (ECF No. 75) is DENIED.

Dated this 23rd day of May, 2025.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge

7